FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC 23 PM 3: 33

Phillip Paul Weidner & Associates, Inc.
330 "L" Street, Suite 200
Anchorage, Alaska 99501
(907) 276-1200

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. A96-335 CV (JWS) |
| ) | |
| TWELVE PIECES OF REAL PROPERTY, ) | |
| ET AL., ) | |
| Defendants. ) | |

### SUPPLEMENTAL BRIEF BY DEFENDANT TWELVE PIECES OF REAL PROPERTY, ET AL., AND BY OWNER GERALD FRANK PLUNK REGARDING PROPER COMPENSATION BY THE GOVERNMENT FOR ILLEGAL SEIZURE, FORFEITURE AND SALE

COME NOW the above-referenced properties listed as *in rem* defendants, and further, Gerald Frank Plunk, alleged owner of said properties/claimants/defendants, by and through counsel, Phillip Paul Weidner & Associates, a Professional Corporation, and hereby submits, pursuant to this Court's Order, supplemental briefing regarding the proper amount of compensation due Mr. Plunk as owner of property more particularly described as Cabin with acreage more fully described as T17NR5W, Section 33, Seward Prime Meridian, Alaska, Tract A, Plat 77-49, Alaska State Land Survey No. 76-182 ("Hock Lake" property), and the 1975 Super Cub No. N4545B, as a result of:

    1.    The illegal seizure of said property;

    2.    The illegal forfeiture of property;

    3.    The illegal sale of said property.

In particular, this brief sets out why, under the U.S. and Alaska Constitutions, including the right to due process and to just compensation, and the prohibition against deprivation of property without due process of law, that Mr. Plunk as the owner of the properties is entitled to be "made whole" to wit, be made whole as of today's date as to the present day value of the property which was:

1. Seized without probable cause;

2. Forfeited without probable cause over objections;

3. Sold without probable cause over objections.

As set out herein, the "bottom line" is that under the U.S. Constitution and applicable U.S. Supreme Court and Ninth Circuit law, Mr. Plunk is entitled to be "made whole," to wit, he is entitled to compensation equal to the present day value of the property if it had been properly preserved and was available for return today. As evidenced by the testimony of expert witnesses Russell Smoot and Charles Hostetler, and the government's witness Cheryl Campbell, today's replacement value of the property is approximately $240,000.[1]

I.   INTRODUCTION

While the issues may appear a bit confusing in light of the government's attempt to focus on certain cases that are not on point, the issue before this Court is simple. That is, similar to the ancient right of replevin, insofar as the government does not have, and never had, probable cause to seize, forfeit or sell the property, Mr. Plunk is entitled to its return. In point of

---

[1] Note that out of basic equity, Mr. Plunk and the property of course are willing to agree that the monies paid to date, to wit, the approximate sum of $ $88,037.25, plus the statutory rate of interest on date of receipt, from the date of receipt will be a credit for the government toward the sums due, such that the net due as of today's date is approximately $151,962.75.

fact, an argument can be made, and the Court might wish in it's discretion to order same, that the government is required to actually replace the exact property, or it's real kind equivalent.[2]

Many of the cases cited by the government are unique, and involve, for instance, seizures that were illegal due to failure to give adequate notice to the owner of the property of its seizure, and are not cases where the government in fact had no probable cause to forfeit the property, over the contemporaneous objection of the claimant.

Where the government has seized, forfeited and sold property over objection, with no probable cause to do so, the cases are squarely on point that it is the government's duty to "make the property owner whole" which in turn means fair market value as of the date of the necessary return if the government cannot return the exact property.

In this regard, the issue of "interest" i.e., whether interest is from the date of seizure, whether there is an issue of deprivation of rent, etc. is not necessarily relevant or even germaine, since the focus must be to "make Mr. Plunk whole."[3]

When one examines the record in this case, including the largely undisputed, and in any event, the overwhelming testimony of the expert witness Mr. Smoot, it is clear that the

---

[2] See the Ninth Circuit's reference to Rose II of Aberlone, United States v. $277,000, 69 F.3d 1491, 1496 n. 2 (citing Sherwood v. Walker, 66 Mich. 568 (1887)).

[3] Note in that regard that, as the Court is well aware as he was the sentencing court in the criminal case, Mr. Plunk is serving two life sentences as a result of criminal convictions. As the Court is further aware, there was a judgment of acquittal in the criminal case as to forfeiture, the Court initially ruled that double jeopardy and/or *res judicata* or collateral estoppel precluded the instant forfeitures. The Court further indicated that due to "extra judicial knowledge" the Court was aware of the failure of the government to even present any probable cause as to these properties in the criminal case. See, Docket No. 51 at 4 in U.S. v. Four Aircraft, Case No. A94-401 CV (JWS). The reality is that the Ninth Circuit has now ruled, and the government has conceded, there is no probable cause as to the property at issue. Accordingly, in this matter Mr. Plunk, as owner of the property, is entitled to full rights and remedies and justice, to wit, full compensation to "make him whole," today.

Supplemental Brief by Defendant Twelve Pieces of Real Property, et al., and by Owner Gerald Frank Plunk
Regarding Proper Compensation by the Government for Illegal Seizure, Forfeiture and Sale        *Page 3*

only fair remedy in this case is to award Mr. Plunk a sum equal to the present day value of the property, with a credit to the government for sums paid to date.

## II.        APPLICABLE LAW

The leading cases in the area are United States v. James Daniel Good Real Property, 510 U.S. 43, 62 (1993) (hereinafter "Good"); United States v. Marshall, 338 F.3d 990, 992 (9th Cir. 2003); United States v. Real Property Located at 22 Santa Barbara Drive, 264 F.3d 860, 869 (9th Cir. 2001); United States v. Marolf, 173 F.3d 1213, 1219 (9th Cir. 1999); United States v. $133,735.30, 139 F.3d 729 (9th Cir. 1998) (actual interest earned where seized cash was placed in an interest-bearing account must be returned along with the principle to fully disgorge the Government's benefit); United States v. Real Property Located at 20832 Big Rock Drive, 51 F.3d 1402, 1405-06 (9th Cir. 1995) (hereinafter "Big Rock"); United States v. $277,000, 69 F.3d 1491 (9th Cir. 1995) (court ordered Government to pay back wrongfully seized funds along with constructive interest at "alternate borrowing rate" where funds had not been placed in interest bearing account); United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road, 59 F.3d 974 (9th Cir. 1995) (hereinafter "El Dorado"), abrogation on other grounds recognized by United States v. $ 273,969.04 U.S. Currency, 164 F.3d 462, 466 n. 3 (9th Cir. 1999); and United States v. Real Property Located at Incline Village, 976 F. Supp. 1327, 1349-50 (D. Nev. 1997) ("Until the date the court enters final judgment, both the rents generated by the defendant properties and the interest earned on the proceeds from the sales of the defendant properties belong to [the claimant].").

In Good, the Supreme Court characterized the prejudgment seizure of real property as a deprivation that "gives the Government not only the right to prohibit sale, but also the right to evict occupants, to modify the property, to condition occupancy, to receive rents, and

to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property." Good, 510 U.S. at 54. The United States Court of Appeals for the Ninth Circuit has "looked to the language of Good *in the attempt to devise a remedy for illegal seizure that would make a claimant whole*". United States v. Real Property Located at 22 Santa Barbara Drive, 264 F.3d at 869 (emphasis added). See, e.g., United States v. Marolf, 173 F.3d at 1219 (9th Cir. 1999) ("[Claimant's] continued lack of possession of the [unconstitutionally forfeited and sold personal property, i.e., the vessel *Asmara*] constitutes an 'actual injury' for which he deserves more than nominal damages.").[4] For example, in Big Rock, the Ninth Circuit held that the proper remedy for an illegal seizure of property is the suppression of evidence obtained as a result of the seizure and the payment of any rents accrued during the illegal seizure. Big Rock, 51 F.3d at 1406 (citation omitted). The holding in Big Rock was extended in "El Dorado." The El Dorado court held that "an award of rents may not be the sole relief available to [the claimant] . . . . The district court should make a determination of the appropriate monetary or *other relief, if any, for loss of use and enjoyment to which [the claimant] is entitled for the illegal seizure of his property*." El Dorado, 59 F.3d at 981 (emphasis added).

---

[4] Note that any attempt by the government to try and distinguish personality from real property is meaningless. See, Government's Opposition to Motion for Further Compensation (alleging that Good does not apply to "personality" versus real property). In point of fact, Marolf dealt with fashioning a remedy for a wrongfully seized, (without proper notice) boat. Marolf, 173 F.3d at 1213 (the vessel *Asmara*). The Marolf panel clearly stated that the claimant's "continued lack of possession of the *Asmara* constitutes an "actual injury" for which he deserves [to be fully and fairly compensated]." Id. at 1219.

Moreover, while it may be that their fine distinction is to be held as to when use of property must be compensated for vis-à-vis a seizure date versus forfeiture date, etc., much of that language is rooted in Rule 41 law which deals simply with a return for an illegal seizure (for instance for unconstitutional and substantive procedures other than lack of probable cause), and not as to the basic necessity of "making the owner whole" when there is no actual probable cause for the seizure, forfeiture or sale.

Moreover, the Ninth Circuit has in fact recognized in <u>Marshall</u>, that it is important to consider the reality of the present value of the property at the time of return. <u>United States v. Marshall</u>, 338 F.3d 990, 992 (9th Cir. 2003).[5] In that matter, of course, the holding was that the owner was not entitled to extra compensation since the market had substantially "crashed" as to the real estate, and thus there would be some type of windfall if extra money was paid. Here it is exactly the opposite, the evidence is overwhelming from the expert Mr. Smoot that the plane should have been properly preserved, that if properly preserved, it's value as of today's date would be approximately $200,000, and accordingly, Mr. Plunk is entitled to be made whole. Good for the goose. Good for the gander. If the Ninth Circuit rules that an aggrieved property owner takes the hit on depreciation, he obviously is entitled to compensation for appreciation, i.e., "make him whole," by paying present value. <u>See</u>, e.g., <u>United States v. $277,000</u>, 69 F.3d at 1496 ("If the government seized, for example, a pregnant cow and was ultimately found not to be entitled to the cow after it had given birth, it could hardly be contended that the government had fulfilled its duty by returning the now-barren cow, but retaining the calf.") (citing to the example of Rose II of Aberlone in <u>Sherwood v. Walker</u>, 66 Mich. 568 (1887)). Here, the appreciation in value is the calf, and must be returned along with the cow, which is fair market value on the date of seizure/arrest.

---

[5] In <u>Marshall</u>, the Government conceded it had violated Marshall's rights under <u>Marolf</u>, and accordingly, Marshall was entitled to "a sum equal to the value of the property wrongfully forfeited." <u>Id.</u> As Marshall's due process rights had been violated by the forfeiture, the property had to be returned. <u>Id.</u> at 993. But, "because this was impossible, [claimant] was *entitled to the value of what was taken from him improperly.*" <u>Id.</u> (emphasis added.) The court determined that on the date of sale the government lost the ability to return the property itself, and thus "the *value on the date of sale* was the proper measure of the substitution of money for return of property." <u>Id.</u> at 994.

Supplemental Brief by Defendant Twelve Pieces of Real Property, et al., and by Owner Gerald Frank Plunk
Regarding Proper Compensation by the Government for Illegal Seizure, Forfeiture and Sale          Page 6

III.  SUMMARY OF THE EVIDENCE

While the Court was privy to the evidentiary hearing, and obviously has detailed notes as to the evidence, it is useful to point out the following as to the evidence. The plane was in exceptional condition at the time of arrest/seizure by the government. The plane was outfitted with special equipment for use in the Alaska bush and for FAA certification as a specialty built aircraft and for use to transport passengers as part of Mr. Plunk's guiding business.

Additionally, the expert Mr. Smoot is imminently qualified, has done numerous appraisals for local banks, was definitively familiar with the actual airplane (had done most of its extensive maintenance), and indicated its unique nature, the fact that it was certified as a special aircraft, it had impeccable maintenance and log books, and that using a base price for the plane plus an appropriate analysis of it's extra components, that it's present day value was upwards of $200,000. Moreover, if the Court was even considering using some type of analysis involving interest, then at a minimum, the award should be the value as of the date of sale (which was $110,000 - 120,000), plus interest thereon to date, however, that would not "make Mr. Plunk whole" since Mr. Plunk is entitled to the reasonable commercial appreciation of the property of which he has been deprived.[6]

Moreover, concerning any question as to the "log books," the evidence of record shows that the log books were the subject of the seizure, and the Marshals had a responsibility to

---

[6] Concerning any confusion over the "floats," again, Mr. Plunk's Affidavit is in evidence, it is absolutely critical for the Court to recognize, the plane in fact had Aqua floats with it at the time of the seizure, and presumably at the time of the forfeiture and sale. The other floats could not even be used on that plane, and if they were changed in the interim, that is the responsibility of the U.S. Marshals, since they were the custodians. Likewise, the U.S. Marshals are responsible for any alleged deterioration of the aircraft, since the testimony is that if it was properly maintained and the engine was "pickled" as well as the tires properly maintained, there would have been no real deterioration.

maintain the log books and present them with the aircraft for sale. Further, even if the log book issue is considered, the testimony from the expert Mr. Smoot is that most of the loss of the log books would not diminish the value of the aircraft, since they could be reconstructed, it's approximately $10,000 such that at least $190,000 is due under present day valuation compensation.

There are also significant issues in the record as to whether the sale was truly a fair sale, since the national service auction house located in Texas was forced to be used by the Marshals services procedures and the federal contract with same, and a properly advertised local sale, with the log books, would undoubtedly have brought significantly more. On that point, even the government's witness Mr. Gove agreed that full value was not obtained due to use of the Texas auction house.

However, it must be emphasized that in reality, the actual proceeds obtained from the sale, and whether in fact it was a fair sale, are largely irrelevant, since the duty on the government is to "make Mr. Plunk whole," i.e., pay <u>today</u> its <u>value today</u>.

If the government sold at too low a price, failed to maintain the aircraft, lost the log books, etc. that is all the responsibility of the government, and irregardless of any impact on the sale, the duty to "make Mr. Plunk whole" means that the government is responsible for present day value.

Concerning the real property, the testimony is that at the time of the sale the value (irrespective of what the property was actually sold for, which is obviously less) was at least $29,000 under the appraisal. Moreover, the testimony is that today it is worth at least $34,000-39,000. Accordingly, those sums are likewise due.

Another example would be the reference to the ancient premise of the right to replevin of a unique cow.  <u>See</u> the Ninth Circuit's reference to Rose II of Aberlone, <u>United States v. $277,000</u>, 69 F.3d at 1496 n. 2 (citing <u>Sherwood v. Walker</u>, 66 Mich. 568 (1887)).

Assume the government, without probable cause, arrests, seizes, forfeits, and sells a prize Jersey Cow, that is valuable, i.e, worth $5,000 at the time of seizure, and under expert testimony, if properly cared for, would be worth $10,000 today.  Assume further, the cow produces $100 per day worth of milk.  While arguments can be made as to whether the cow is "real property," or "personality," and whether and when compensation should be forthcoming for the loss of the milk in the interim, versus the maintenance costs, etc., just as the government attempts to confuse the issues in this case by drawing distinction between personality and real property and meaningless distinctions between arrest, seizure, etc. as to Rule 41 motions, the reality is, that if the government had chosen, over objection, to sell that cow, even for $5,000, and the cow was slaughtered or irretrievable, they would be required to either return the cow today or pay $10,000, (the present day value of the cow).  The same is true with the airplane and the property.  Now, in point of fact, they would be required, in all likelihood, to pay $10,000, to wit, the present value of the cow, plus compensation for the lost milk.  Mr. Plunk is not necessarily seeking compensation for the milk, but is entitled to the full price of his cow.

### IV.  SUMMARY AND CONCLUSION

Again, the situation is in all squares with the right of replevin.  But for the government's U.S. Marshal's office insistence on selling the aircraft over Mr. Plunk's objection, while an appeal was pending, and the Court allowing them to do so, the aircraft would be available today to return to Mr. Plunk, as would the real property.

Accordingly, under the controlling authorities of the United States Supreme Court and Ninth Circuit, discussed in detail above, Mr. Plunk has a right to "be made whole" and in point of fact, should have a right to actual return of the aircraft for him to in turn sell at the fair market value, and/or return of the real property to do likewise.[7] To crystallize the issue, the Court should consider the following:

1.  Assume that the government seized 500 gold coins, with the price of gold at that time of approximately $350 per ounce;

2.  The value at the time of the seizure (without probable cause) would thus be approximately $175,000;

3.  Assume further, that the government sold those coins, over objection, while the appeal was pending, and at that time the fair market value of gold was $400 per ounce, such that they sold for $200,000 (i.e., even full fair market value at the time);

4.  Assume further, that as here, an appellate court then rules, and the government concedes, that there was no probable cause for seizure, forfeiture or sale;

5.  Obviously, the issue would not involve interest, maintenance charges, etc., since in order to "make the owner whole" the government would be responsible for returning either 500 gold coins or their equivalent at the time of return to the owner;

6.  Since the present price of gold today is approximately $550 per ounce, the government would obviously owe at least $275,000.[8]

---

[7] Note that no argument can be made by the government that any storage fees, sale fees, maintenance fees, etc. are to be deducted, since if Mr. Plunk was "made whole," and the seizure had never occurred, he would have had the use of the aircraft and profit in the interim and could have offset any such charges with rents, issues or profits thereof.

[8] This likewise illustrates the fact that issues as to deterioration, etc., are not relevant since it is the government's duty to see there is no deterioration. It likewise illustrates the fact

Supplemental Brief by Defendant Twelve Pieces of Real Property, et al., and by Owner Gerald Frank Plunk
Regarding Proper Compensation by the Government for Illegal Seizure, Forfeiture and Sale          Page 10

The situation in this case is similar, and Mr. Plunk is entitled to the full present day fair market value of the aircraft, with it's accessories (approximately $200,000), plus the full fair market value of the real property (approximately $34,000-$39,000), with a credit to the government of the sums paid to date (approximately $$88,037.25, plus interest on said $88,037.25 at the government rate since receipt).

As stated in the Motion for Further Compensation, the issue presented to this Court is:

*What will put Claimant Plunk in the same position he would have been in today had the government never seized, and the Court never decreed and approved over objection, forfeiture and sale of the plane and the Hock Lake property?*

It is apparent, what will make Mr. Plunk whole is either return of the plane and property, in the same condition as the date of seizure/arrest, or, in the alternative, fair market value of the plane and property assessed in today's market (approximately $239,000, with a credit for approximately $89,000).

RESPECTFULLY submitted this 23rd day of December, 2005.

WEIDNER & ASSOCIATES, INC.
Attorneys for Defendant Properties/Claimant Plunk

By: _____
Phillip Paul Weidner

---

that under the Ninth Circuit case of Marshall, coupled with Good, a property owner who is being compensated for property that has been improperly seized, forfeited and sold, is entitled to appreciation of the property as to fair market value at the time of the return.