FILE COPY

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | 03:96-cv-335 JWS |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER FROM CHAMBERS |
| ) | |
| TWELVE PIECES OF REAL ) | [Re: Motion at Docket 143] |
| PROPERTY WITH ALL ) | |
| APPURTENANCES, T17N R5W, ) | |
| Seward Prime Median, Alaska, ) | |
| Tract A; *ET AL*, ) | |
| ) | |
| Defendants. ) | |

## I. MOTION PRESENTED

At docket 143 defendant Gerald Frank Plunk ("Plunk") filed a Motion for Compensation for Unconstitutional Forfeiture of Property. Plaintiff United States of America ("Government") opposed the motion. An evidentiary hearing was held on December 9, 2005, supplemental briefs were filed, and oral argument heard on February 3, 2006. The matter is ripe for decision.

## II. BACKGROUND[1]

This proceeding is the culmination of drug-forfeiture proceedings initiated by the Government nearly a decade ago. The motion at bar involves two assets: (1) a 1975 SuperCub PA-18 aircraft, FAA Reg. No. N4545B ("SuperCub"); and (2) real property more particularly described as T17N R5W, Section 33, Seward Prime Meridian, Alaska, Tract A, Plat 77-49, Alaska State Land Survey No. 76-182 ("Hock Lake property").

---

[1] The history of the proceedings in this case is well known to the parties and is not recited here except as necessary to an understanding of this order.

EXHIBIT A p1

The Government sold the properties to third parties (over the objections of Plunk) at a forfeiture sale pursuant to court order: (1) December 18, 1998, the SuperCub for $52,525; and (2) April 16, 1999, the Hock Lake property for $21,600. The forfeiture of these two items of property was subsequently held not to have been supported by probable cause and invalidated. On or about March 25, 2005, the Government paid Plunk the sum of $88,037.25 ($62,658.43 for the SuperCub and $25,378.82 for the Hock Lake property). These sums included the proceeds of the sale plus interest at the Seized Assets Deposit Fund rates in effect from the date of sale through February 28, 2005, compounded monthly.

### III. ISSUES

In his motion Plunk claims entitlement to: (1) damages for loss of use and enjoyment and fair rental value of the improperly seized property from the date of seizure until the date of sale; (2) fair market value of the property at the time of sale; and (3) interest computed at the Alaska statutory rate from the date of sale.

### IV. DISCUSSION

Analysis starts with identifying the basis for Plunk's claims. Plunk's arguments to the contrary notwithstanding, there was no due process violation in the forfeiture procedures followed by the Government in this case. Plunk does not claim that any action taken by the Government was without notice and an opportunity to be heard. The Government initiated forfeiture proceedings and this court, over the objections of Plunk, found probable cause existed to support the forfeiture of the property, authorized an interlocutory sale of the aircraft, and entered a decree of forfeiture to the Government on the realty.[2] On appeal, the Ninth Circuit, holding that this court erred in finding the existence of probable cause to support forfeiture with respect to the Super Cub and Hock Lake property, reversed and remanded the case for further proceedings.[3]

---

[2] Dockets 86 and 99, respectively.

[3] Docket 106.

2

EXHIBIT A p2

At the point that it was determined the Government lacked probable cause for forfeiture of the subject properties the Government had a duty to return the property to Plunk under 28 U.S.C. §2465.[4] Because the Government had disposed of the subject properties, it failed to fulfill that duty presenting a question of the appropriate remedy for a statutory violation.

### A. Jurisdiction

Analysis of matters before this court must necessarily start with a determination of the court's jurisdiction over the claims asserted. Even if not raised by the parties, the court has a duty to determine its subject matter jurisdiction *sua sponte*.[5] As this case seeks recovery from the United States, the doctrine of sovereign immunity applies. The court lacks subject matter jurisdiction over a claim against the United States if it has not waived its sovereign immunity and consented to be sued on that claim.[6] When the United States consents to be sued, the terms of the waiver determine the extent that the court may exercise jurisdiction,[7] and the scope of any waiver of immunity is to be strictly construed in favor of the sovereign.[8]

Any recovery arising out of the wrongful failure to return the subject properties under § 2465 is founded in either tort or equity.[9] Prior to the enactment of the Civil

---

[4] 28 U.S.C. § 2465 (prior to amendment in 2000):

Upon entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.

[5] *United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 966–67 (9th Cir. 2004).

[6] *Balser v. Department of Justice, Office of the U.S. Trustee*, 327 F.3d 903, 907 (9th Cir. 2003).

[7] *Id.*

[8] *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–61 (1999).

[9] *See Hatzlachh Supply Co. Inc. v. United States*, 444 U.S. 460, 651–652 (1980) (Blackmun, J. dissenting).


EXHIBIT A p3

Asset Forfeiture Reform Act of 2000 ("CAFRA"),[10] the United States had not waived its sovereign immunity with respect to damages for civil forfeiture actions arising out of criminal activities.[11] Although the Federal Tort Claims Act ("FTCA") constitutes a broad waiver of immunity, 28 U.S.C. § 2680(c), prior to its amendment by CAFRA §3(a), excluded from the broad waiver of immunity: "Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer." Where a § 2680 exception applies, the United States has not waived its immunity from suit under the FTCA, and a court lacks subject matter jurisdiction over such claims.[12]

The court must, therefore, look to the extent to which the remedy provided in § 2465, prior to its amendment by CAFRA, constituted a waiver of sovereign immunity.[13] No court, including the Ninth Circuit, ever held that § 2465 constituted a waiver of sovereign immunity for damages other than for costs.[14] Courts have consistently treated § 2465 as constituting an equitable remedy and granted relief accordingly. The court addresses the three items of additional relief sought by Plunk in that context.

### B. Loss of Use and Enjoyment/Rent

---

[10] CAFRA is applicable to forfeiture proceedings initiated 120 days after its enactment (April 25, 2000). PUB.L. 106-185, §21, 114 STAT. 202, 225 (2000). These proceedings were initiated prior to the effective date of CAFRA and are subject to the law as it existed prior to that date.

[11] See United States v. Parcel of Property, 337 F.3d 225, 235–36 (2nd Cir. 2003) (holding that interest was not recoverable as damages in actions initiated prior to the effective date of CAFRA); United States v. $30,006.25 in U.S. Currency, 236 F.3d 610, 615 (10th Cir. 2000) (same).

[12] Nurse v. United States, 226 F.3d 996, 1000 (9th Cir. 2000).

[13] CAFRA § 4(a) essentially retained the original language as subsection (a) and added a new subsection (b) containing a limited waiver of sovereign immunity for certain damages. i.e., attorney's fees and costs, and pre- and post-judgment interest. That waiver did not include intangible benefits or other payments not specifically authorized by subsection (b).

[14] The Ninth Circuit has not directly addressed this issue although it has noted, in discussing a Federal Circuit case, that § 2465 does not authorize an award of damages for depreciation. United States v. $277,000 U.S. Currency, 69 F.3d 1491, 1497 (9th Cir. 1995).

EXHIBIT A p4

There is no evidence in this case that the subject properties were rented or generated any rental income. The principal case relied upon by Plunk, *United States v. Real Property Located at 22 Santa Barbara Drive*, held that in the absence of any rental income an award from rents would be speculative.[15] Since the Government realized no profit or benefit from the properties that should be equitably disgorged and the doctrine of sovereign immunity bars the recovery of damages, Plunk is not entitled to recover the rental value, if any, of the subject properties.

With respect to the Hock Lake property, Plunk was not deprived of the use or enjoyment of the property. Under an agreement reached between the Government and Plunk, the Government agreed not to take possession of or interfere with the use of the property by Plunk. Plunk in exchange agreed not to attempt or complete any action that would interfere with the marketability of the property.[16]

The law in this circuit with respect to the issue of recovery for the loss of use or enjoyment may appear to be in conflict. On the one hand, as Plunk correctly notes, in *United States v. Real Property Located in El Dorado County at 6380 Little Canyon Road*, the Ninth Circuit remanded a case with instructions to "make a determination of the appropriate monetary or other relief, if any, for loss of use and enjoyment" of a residence.[17] On the other hand, four months later another panel in *United States v. $277,000 U.S. Currency* stated:[18]

> Thus Montes does not have a general claim to receive interest (or damages). In fact, were we to support this claim by Montes, then he should also receive damages for the loss of use of the truck, even if it were simply sitting in a government pound during this time, and interest on the money, even if the government was retaining the physical cash as evidence.

---

[15] 264 F.3d 860, 869 (9th Cir. 2001). Although not construing § 2465 and therefore not strictly binding, in the absence any authority directly on point, the court finds this case to be authoritative guidance on the issue.

[16] Docket 154, Exhibit 1-B.

[17] 59 F.3d 974, 981 (9th Cir. 1995). Abrogation on other grounds recognized and quoted on this point in *22 Santa Barbara Drive*.

[18] 69 F.3d 1491, 1493 (9th Cir. 1995).

EXHIBIT A p5

Ordinarily, when two panel decisions in this circuit appear to conflict, the court is bound to follow the earlier opinion.[19] However, the conflict is more ephemeral than real and these cases are reconcilable based upon factual differences.[20]

In *6380 Little Canyon Road*, relying heavily on *Good*[21] and its dissertation concerning the unique character and historical importance given to a home, the Ninth Circuit directed the district court to determine the appropriate relief, monetary or other, to be awarded for the wrongful seizure. Because *6380 Little Canyon Road* did not discuss sovereign immunity or refer to the award as damages, the court assumes the relief the district court could award, although monetary, would be equitable in nature.[22] The decision in *$277,000 U.S. Currency*, on the other hand, not only applied sovereign immunity but involved money and a 1986 Dodge Ram Charger, not a residence. Factually, this case fits within *$277,000 U.S. Currency* not *6380 Little Canyon Road*. Plunk is not entitled to compensation for the loss of use or enjoyment of the Super Cub.[23]

### C. Interest Rate

The Government computed interest at the Seized Assets Deposit Fund rates in effect from the date of sale through February 28, 2005, compounded monthly. Plunk, without citation to authority, argues that he is entitled to interest at the statutory rate prescribed by the State of Alaska. Plunk's position is not well taken. Plunk is not

---

[19] *United States v. Rodriquez-Lara*, 421 F.3d 932, 943 (9th Cir. 2005).

[20] The court notes that neither *6380 Little Canyon Road* nor *$277,000 U.S. Currency* was brought under § 2465; however, as with *22 Santa Barbara Drive*, the court finds that even if not strictly binding they provide authoritative guidance on the issue.

[21] *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993).

[22] Although we normally equate monetary awards as being legal (damages), a monetary award may be included as part of equitable relief. *See, e.g., Chauffeurs, Teamsters, and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 571 (1990) ("a monetary award 'incidental to or intertwined with injunctive relief' may be equitable").

[23] Because the issue with respect to the real property here turns on other issues, the court expresses no opinion as to whether *6380 Little Canyon Road* extends to real property other than a residence (home).

EXHIBIT A p 6

entitled to interest as an element of damages;[24] his entitlement to interest flows from the obligation of the Government to disgorge the profits it actually realized,[25] an equitable remedy. By law, the funds realized from the sale of the subject properties were required to be deposited into the Seized Assets Deposit Fund,[26] and invested in obligations of, or guaranteed, by the federal Government.[27] Plunk does not claim that interest was not paid at this rate. Plunk does not allege, let alone proffer any evidence, that the Government realized any greater return on the proceeds of the sale. The Government properly computed the rate of interest payable on the proceeds realized from the sale of the subject properties.[28]

### D. Value of Property

The Government having sold the subject properties was, therefore, unable to return them. The Government concedes that it was obligated to return the substituted *res*, *i.e.*, the proceeds realized from the sale, which it did with interest from the date of sale. In his motion, Plunk argues that he is entitled to the actual value at the time of the sale; in his supplemental brief Plunk argues that he is entitled to compensation to make him whole today.

That Plunk is entitled to receive the value of the property the Government is unable to return because it has been sold appears to be well-settled in this circuit.[29] Although Plunk presents somewhat inventive arguments that he is entitled to today's value,[30] not the value of the subject property at the time it was sold in 1998 (the Super

---

[24] *$277,000 U.S. Currency*, 69 F.3d at 1493.

[25] *Id.*, at 1498.

[26] 28 U.S.C. §524(c)(4).

[27] 28 U.S. C. §524(c)(5).

[28] See *United States v. $133,735.30 Seized From U.S. Bancorp Brokerage Account No. 32130630*, 139 F.3d 729, 731–732 (9th Cir. 1998).

[29] See *United States v. Marshall*, 338 F.3d 990, 992 (9th Cir. 2003); *United States v. Marolf*, 179 F.3d 1213, 1220 (9th Cir. 1999). Although these cases involved motions under Fed. R. Crim. P. 41, they nevertheless provide authoritative guidance on the issue.

[30] His argument referring to a pregnant cow that gives birth to a calf is inapposite. Here, the analogy would be to a cow that was sold before it gave birth. The alternative argument that

7



Cub) or 1999 (Hock Lake property), the Ninth Circuit has expressly held that the date of the sale, when the Government lost the ability to return the property, is the appropriate valuation date.[31] The Government argues that the price at which the property sold in a commercially reasonable manner is, in fact, the actual value of the property.

Prior to the sale of the Hock Lake property, the Government obtained an appraisal from R&R Appraisal Services that valued the property at $28,000. The property was subsequently listed through Prudential Vista Real Estate for $29,000 and sold approximately two months later for $21,600.[32] In July 1998, the Government obtained an appraisal of the Super Cub by Walter S. Bettilyon, an aircraft appraiser certified by the National Aircraft Appraisers Association, that valued the aircraft at $52,040. The Government sold the aircraft through Aero-Mod Service on an invitation for bid basis for $52,525.[33] Plunk does not argue that the subject properties were not sold in a commercially reasonable manner.

Plunk presented the testimony of Russel L. Smoot, an aircraft mechanic who had performed substantial repair and routine maintenance work on the Super Cub, that the SuperCub had a value in December 1998 of $122,000. Although Plunk presented testimony in the form of a broker's opinion of the present value of the Hock Lake property, he presented no evidence of its value at the time of its sale in April 1999.

---

he is entitled to today's value for the Super Cub assumes that the aircraft was properly maintained and cared for. Plunk argues that the Government had a duty to properly preserve the aircraft while it was in the Government's possession and, since the Government was obligated to return the aircraft in that condition and was unable to do so, he should recover its value at the time it should have been returned to him. The problem with Plunk's theory is that it does not take into account the doctrine of sovereign immunity. Assuming the Government had a duty to preserve the aircraft, if it breached that duty Plunk would have to bring an action for damages. That action would be barred. Recovery of the sales proceeds is based on either an entitlement to the substituted *res* or the equitable remedy of disgorgement—not damages.

[31] *Marshall*, 338 F.3d at 994.

[32] Prior to accepting the offer of the buyer, the Government received and rejected offers of $5,000, $14,750, and $15,100. In addition, the buyer paid $1,682 in delinquent real property taxes on the property.

[33] The Government also received bids of $42,753, $44,000, and $52,100.

EXHIBIT A p8

The value we are concerned with in the case at bar is the market value of the property. Market value is commonly defined as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction."[34] As one court has observed:[35] "Barring an actual transaction, value can only be proved by appraisal and appraisals, being opinions, are inexact at best." The Ninth Circuit, observing that usually evidence on the issue of value consists principally of the opinions of opposing experts, which are notoriously disparate, stated:[36]

> The weight to which an appraiser's opinion testimony is entitled turns upon the validity of the appraiser's premises, procedures, and theories; the soundness of his factual determinations; the comparisons he has made; the methods he has followed, and the formulae he has applied."

In this case, the appraisal predates the sale of the Hock Lake property by about four months. The property was appraised at $28,000 and sold for an effective sales price of $23,282,[37] approximately 83 percent of the appraised value. The Super Cub was appraised at $52,040 and sold about five months later for $52,525, slightly more than the appraised value. The Super Cub was valued *post hoc* some seven years after the sale as having a value at the time of the sale of $122,000, which, if applicable, would result in a sale at approximately 44 percent of its appraised value. Both sales were conducted in a commercially reasonable manner and constituted arms-length transactions.

While the court might easily get drawn into the battle of the appraisers, including relative qualifications and the factors listed by the Ninth Circuit and, perhaps, an analysis of the reasonableness of the sales price of the Hock Lake property in relation to its appraised value, it is unnecessary to so do. "By definition, when there has been a

---

[34] BLACK'S LAW DICTIONARY 1587 (8th ed. 2004).

[35] *Echols v. Commissioner of Internal Revenue*, 935 F.2d 703, 708 n.2 (5th Cir. 1991).

[36] *United States v. Meyer*, 398 F.2d 66, 69 (9th Cir. 1968).

[37] $21,600 sales price plus the $1,682 in delinquent taxes paid by the buyer. The taxes paid by the buyer, which were an obligation of Plunk, was a benefit realized by Plunk and is properly considered as part of the sales price in this analysis. *See Marshall*, 338 F.3d at 993–994.


EXHIBIT A

fair sale the purchase price reflects the fair market value of the asset."[38] When there has been a fair, arms-length transaction, evidence of appraised values is irrelevant because the sale price is a better indicator of the asset's value than any estimate of value given prior to the sale.[39] Accordingly, the court agrees with the Government that the price realized at the sales of the subject properties reflects the actual value at the time of sale.

Gerald Frank Plunk is not entitled to any compensation in addition to the $88,037.25 he has already received from the Government.

### V. CONCLUSION

The court having conducted an evidentiary hearing, the foregoing constitute this court's findings and conclusions pursuant to Fed. R. Civ. P. 52(a). Based thereon, the motion at docket 143 is **DENIED**.

**IT IS ORDERED THAT** the Final Decree of Forfeiture entered August 26, 1998, at docket 99 is amended to provide Gerald Frank Plunk shall recover from the United States the total amount of $88,037.25; in all other respects the judgment entered at docket 99 remains unchanged. The Clerk shall enter the Amended Final Decree of Forfeiture.

**IT IS HEREBY RECOGNIZED** that the United States has fully satisfied the aforesaid judgment.

DATED at Anchorage, Alaska this 7th day of February, 2006.

/s/
JOHN W. SEDWICK
United States District Judge

---

[38] *Romley v. Sun National Bank (In re Two S Corp.)*, 875 F.2d 240, 244 (9th Cir. 1989).

[39] *Id.*

EXHIBIT A p.10